# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Robert Colvin, | Court File No.: _____ |
| Plaintiff, | |
| v. | **COMPLAINT** <br> **(JURY TRIAL DEMANDED)** |
| Lindsay Sash, Inc. d/b/a <br> Lindsay Window & Door, LLC, <br> L.W. Management, Inc., and <br> Lindsay Windows, LLC, | |
| Defendants. | |

Plaintiff Robert Colvin ("Colvin"), by his attorneys, Nichols Kaster, PLLP, brings this action for damages and other relief, stating the following as his claims against Defendants Lindsay Sash, Inc. d/b/a Lindsay Window & Door, LLC, L.W. Management, Inc., Lindsay Windows, LLC (collectively, "Lindsay Window" or "Defendants"):

## PARTIES

1. Plaintiff Robert Colvin is a man who resides in Cranston, Rhode Island.

2. Lindsay Sash, Inc. d/b/a Lindsay Window & Door, LLC is a Minnesota corporation with its principal executive office at 1995 Commerce Drive, North Mankato, MN 56001.

3. L.W. Management, Inc. is a Minnesota corporation with its principal executive office at 1995 Commerce Drive, North Mankato, MN 56001.

4. Lindsay Windows, LLC is a Minnesota limited liability corporation with its

principal executive office at 1995 Commerce Drive, North Mankato, MN 56001.

## JURISDICTION AND VENUE

5.	The Court has original jurisdiction to hear this Complaint and to adjudicate the claims stated herein because the matter in controversy exceeds $75,000 and is between citizens of different states. *See* 28 U.S.C. § 1332.

6.	This Court has jurisdiction over Defendants because Defendants are organized under the laws of the State of Minnesota, headquartered in the State of Minnesota, and conduct business in the State of Minnesota.

7.	Venue is proper in the District of Minnesota because Defendants are organized under the laws of the State of Minnesota, headquartered in the State of Minnesota, conduct business in the State of Minnesota, and a substantial part of the events and omissions giving rise to the claims described herein occurred in this District. *See* 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

8.	Lindsay Window is a manufacturer of energy efficient vinyl windows and sliding patio doors.

9.	Lindsay Window operates a manufacturing facility in Mankato, Minnesota.

10.	In or around December 2016, Colvin and Geoff Roise, Owner and Manager of Lindsay Window, were engaged in discussion about Colvin coming to work for Lindsay Window. During these discussions, Colvin and Geoff Roise spoke about Colvin's potential compensation, including the payment of annual bonus, should Colvin agree to become employed by Lindsay Window.

11. At the time of these discussions in December 2016, Colvin and his wife lived in North Carolina.

12. Lindsay Window knew that if Colvin accepted employment with Lindsay Window, Colvin would need to relocate from North Carolina to Minnesota and discussions about Colvin's prospective employment included Lindsay Window paying certain moving expenses for Colvin.

13. During the discussions between Colvin and Geoff Roise regarding Colvin's prospective employment with Lindsay Window, Colvin asked Geoff Roise questions regarding the amount he could expect to earn as an annual bonus.

14. Geoff Roise responded to Colvin that he would provide Colvin with an idea of the projected annual bonus based on financial information from the previous few years.

15. In an email to Colvin dated December 27, 2016 with the subject line "bonus amounts," Geoff Roise explained that Colvin's prospective bonus would be based on "the EBCDTA (essentially the operational earnings) minus $1MM" and "[t]he percentage to start with would be 3.5%." In this same email, Geoff Roise wrote: "While there are no guarantees, it would not be unreasonable to see a bonus of $40K+ with revenue of $17-$18MM."

16. On December 30, 2016, Geoff Roise sent Colvin an email with the subject line "Draft Package." In the email, Geoff Roise explained that the position Lindsay Window would be offering to Colvin would be "VP of Operations" and he provided details about compensation terms, including an annual bonus based on earnings before

3

depreciation and contributions ("EBDC"). Geoff Roise wrote that once he and Colvin discussed the draft package, he would put together "a formal letter."

17.    Continuing into early January 2017, Colvin and Geoff Roise had further verbal and email negotiations about the compensation and benefits terms of Lindsay Window's employment offer to Colvin.

18.    In early January 2017, Geoff Roise provided the final offer of employment to Colvin in a letter dated January 6, 2017. A copy of the Offer Letter from Lindsay Window to Colvin dated January 6, 2017 (hereinafter the "Offer Letter") is attached as **Exhibit A**.

19.    The Offer Letter from Lindsay Window to Colvin provided the following information to Colvin about the employment terms Lindsay Window was offering him: the position, start date, salary, bonus, one-time signing bonus, moving expenses, living expenses, paid time off, and health insurance.

20.    The Offer Letter from Lindsay Window to Colvin identifies the job position and title Lindsay Window was offering to Colvin as "VP of Operations."

21.    Part of the compensation terms Lindsay Window offered to Colvin in the Offer Letter included a bonus payment, stating:

> Bonus: 3.5% of the following calculation.  When we talk about Earnings before depreciation and contributions (EBDC) the calculation does not include interest income, etc.
>
> - 2017: 3.5% of (EBDC - $1,100,000)
>
> - 2018: 3.5% of (EBDC - $1,000,000)
>
> - 2019 3.5% of (EBDC – $1,200,000)

4

> The idea would be to keep the calculation the same after 2019. The calculation could change with "general manager" type responsibilities that would include sales, etc.

22. Colvin accepted Lindsay Window's offer of employment pursuant to the terms of the Offer Letter.

23. Absent Lindsay Window's promises in the Offer Letter, Colvin would not have incurred the expense and inconvenience of relocating to Minnesota.

24. On or about January 9, 2017, Colvin commenced his employment with Lindsay Window as Vice President of Operations.

25. In or around early January 2017, Colvin relocated to Mankato, Minnesota. Colvin's family remained in North Carolina until July 2017 when they joined him in Minnesota.

26. As Vice President of Operations, Colvin was charged with leading production, customer service and warehouse for Lindsay Window's manufacturing facility in Mankato, Minnesota. The Offer Letter from Lindsay Window to Colvin specifically states that Colvin's "obvious primary focus is production."

27. When Colvin began as Vice President of Operations, John Roise, Owner and Chief Executive Officer, and Geoff Roise instructed Colvin to focus his time and efforts on production and told Colvin that John Roise would focus on shipping and customer service.

28. At no point during Colvin's employment did Lindsay Window inform Colvin that he held any other role than Vice President of Operations.

29. At no point during Colvin's employment did Lindsay Window inform Colvin that he was not Vice President of Operations.

30. Lindsay Window held Colvin out to the public as Vice President of Operations. For example, Lindsay Window printed business cards for Colvin identifying him as "VP of Operations."

31. Between 2017 and 2020, Lindsay Window's total sales invoiced for its Minnesota manufacturing facility increased each year.

32. Lindsay Window never provided Colvin any written performance review concerning his job performance for the years 2017, 2018, 2019 and 2020.

33. During his employment with Lindsay Window, Colvin never received any bonus payment pursuant to his Offer Letter.

34. Lindsay Window concealed its EBDC numbers from Colvin and never explained in detail how Lindsay Window calculated its EBDC numbers.

35. On several occasions, Colvin asked Geoff and John Roise why he never received an annual bonus.

36. When Colvin asked to see the relevant financial information to understand how Lindsay Window calculated the EBDC, John and Geoff Roise refused to permit Colvin access to that information.

37. As just one example, in December 2018 when Colvin asked to see Lindsay Window's monthly financials to understand the EBDC number and the information upon which his bonus compensation was to be calculated, John Roise responded "we are really 'protective' of our financials."

38.     In or around the beginning of 2020, Lindsay Window began a new quarterly employee bonus program.

39.     At no point did Lindsay Window inform Colvin that the new quarterly employee bonus program was intended to replace the bonuses Colvin was due under the Offer Letter.

40.     Lindsay Window paid Colvin a bonus under the quarterly employee bonus program for the first three quarters of 2020.

41.     To date, Lindsay Window has never paid Colvin a bonus pursuant to the new quarterly employee bonus program for the fourth quarter of 2020.

42.     Colvin resigned from his employment with Lindsay Window on or about February 3, 2021.

43.     At the time Colvin separated from Lindsay Window, his job position and title was Vice President of Operations.

44.     On or about March 26, 2021, through counsel, Colvin demanded his earned and unpaid bonuses, including the annual bonuses he is due under the Offer Letter and his fourth quarter bonus for 2020 due under the quarterly employee bonus program.

45.     To date, Lindsay Window has not paid any amount of Colvin's earned and unpaid bonuses.

46.     In addition to Colvin's earned and unpaid bonuses, Defendants owe Colvin statutory penalties under Minnesota Statutes sections 181.13 and 181.14. These sections require prompt payment of employees' wages and commissions, and impose a penalty of a day's wages for each day the employer is deficient in paying, up to fifteen days.

## CAUSES OF ACTION

## COUNT I

### Breach of Contract

47. Colvin incorporates the foregoing paragraphs by reference.

48. A contract, both express and implied, exists between Colvin and Defendants.

49. Defendants are contractually obligated to pay Colvin annual bonuses pursuant to the terms of the contract.

50. Colvin performed all conditions precedent to receiving annual bonuses pursuant to the terms of the contract.

51. Defendants have materially breached this contract by failing to pay Colvin annual bonuses.

52. As a result of Defendants' material breach, Colvin has suffered and will continue to suffer damages, including, but not limited to, the annual bonuses due and owing under the contract, and any other equitable damages, all in an amount in excess of $75,000.

## COUNT II

### Failure to Pay Wages Earned
### Violation of Minn. Stat. §§ 181.13 and 181.14

53. Colvin incorporates the foregoing paragraphs by reference.

54. Colvin is an "employee" under Minn. Stat. § 181.931, Subd. 2.

55. Defendants each are an "employer" under Minn. Stat. § 181.931, Subd. 3.

56. Minn. Stat. §§ 181.13 and 181.14 govern the payment of wages to an employee who quits, resigns, or is terminated.

57. After his resignation, Colvin made a demand to Defendants for his earned and unpaid bonuses.

58. Defendants violated Minn. Stat. §§ 181.13-14 by failing to pay Colvin the bonuses due to him within the time-periods set out in therein.

59. Defendants' failure to pay constitutes a default and entitles Colvin to the remedies available under Stat. § 181.14, Subds. 1 and 2, including, but not limited to, recovery of his unpaid bonuses, and the statutory penalties, interest, and reasonable attorney fees and costs as provided by Minn. Stat. § 181.171, Subd. 3, all in an amount in excess of $75,000.

## COUNT III

### Unjust Enrichment

60. Colvin incorporates the foregoing paragraphs by reference.

61. Colvin conferred a benefit on Defendants through his labors. Defendants are aware of that benefit. It is unjust and inequitable for Defendants to retain the benefit of Colvin's labors without compensating Colvin for the value of those labors.

62. Colvin is entitled to recover the value of his services in *quantum meruit.*

63. Colvin has suffered damages in an amount to be determined at trial, all in an amount in excess of $75,000, based on the reasonable value of his services in *quantum meruit.*

## COUNT IV

### Promissory Estoppel
### (in the alternative)

64. Colvin incorporates the foregoing paragraphs by reference.

65. Defendants made clear and definite promises to Colvin regarding the bonuses Colvin would be paid.

66. It was reasonably foreseeable to Defendants that Colvin would rely on these promises.

67. Colvin relied on these promises and representations from Defendants and as a result was damaged when Defendants did not live up to its promises.

68. Justice and equity require the enforcement of Defendants' promise to Colvin and an award to Colvin based upon Defendants' failure to fulfil such promises.

69. Colvin is therefore entitled to equitable relief in excess of $75,000.

## DEMAND FOR JURY TRIAL

Plaintiff Robert Colvin hereby requests trial by jury Rule 38(b) of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Robert Colvin requests that the Court issue judgment against Defendants, as follows:

A. For an Order adjudging the practices and conduct of Defendants complained of herein to be in violation of the rights guaranteed to Plaintiff under applicable law, and order appropriate injunctive relief;

B. For an award of damages to Colvin for Defendants' breach of contract, plus applicable pre- and post-verdict interest;

C. All relief recoverable under Minn. Stat. §§ 181.13-14, including: an award of all of Colvin's unpaid bonuses, a statutory penalty pursuant to Minn. Stat. §§ 181.13-14, costs and attorneys' fees to the extent allowed by law, and interest;

D. All relief available on Colvin's claims of unjust enrichment and promissory estoppel under common law, including, but not limited to, an award of all of Colvin's unpaid bonuses, with interest;

E. For an award of damages and equitable relief to Colvin for Defendants' failure to abide by its representations and promises;

F. An Order granting Colvin leave to amend his Complaint to add a claim for punitive damages and award Colvin punitive damages as permitted or required by his claims;

G. For an award to Colvin of his attorneys' fees, disbursements, and the costs of this action as available at law or in equity;

H. For an award of interest on Colvin's damages;

I. For all such other and further relief available by statute; and

J. For all such other and further relief as the Court deems just and equitable.

Dated: July 8, 2021               **NICHOLS KASTER, PLLP**

s/Steven Andrew Smith
Steven Andrew Smith, #260836
smith@nka.com
Michelle L. Kornblit, #0397778
mkornblit@nka.com
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Tel: (612) 256-3200
Fax: (612) 338-4878

**ATTORNEYS FOR PLAINTIFF**

# EXHIBIT A

January 6th, 2017

Bob:

Thanks for your patience this week.  It was a bit crazy between Christmas and wrapping up the end of the year.  I enjoyed talking to your references and hope we can find a way to work out a deal.  We've enjoyed getting to know you and your family.

Position: VP of Operations including customer service, warehouse, production.  The obvious primary focus is production.

Start Date: 1/9/2017

Salary: $150,000 per year / $5,769.23 per pay period.  Our payroll is done every 2 weeks (26x/year)

Bonus: 3.5% of the following calculation.  When we talk about Earnings before depreciation and contributions (EBDC) the calculation does not include interest income, etc.
- 2017: 3.5% of (EBDC - $1,100,000)
- 2018: 3.5% of (EBDC - $1,000,000)
- 2019 3.5% of (EBDC – $1,200,000)

The idea would be to keep the calculation the same after 2019.  The calculation could change with "general manager" type responsibilities that would include sales, etc.

One time signing bonus: $2,500

Moving expenses: Flat amount of $20,000
- We would also include 8 round trip tickets using our points.  The rules on these tickets are they need to be made 3 weeks in advance, include a Saturday night stay and have a maximum value of $500.  If tickets are less than $400 we would just pay those out of pocket.
- At the six month point when moving expenses are paid, if Bob is terminated from employment after six months, the moving expenses are the responsibility of Lindsay Windows (Bob is not responsible for paying back the moving expenses).
- If Bob chooses to leave Lindsay Windows after 6 months, moving expenses will be paid back in full if Bob leaves prior to July 1, 2018.  If Bob leaves prior to July 1, 2019 Bob is responsible for paying back ½ of the moving expenses (1/2 is estimated at $10,000)

Living expenses: 5 months of $1,500 / month
- 1/2/2017: amount will be determined based on the cost of finding a 1 Bedroom apartment

PTO: Salaried team members are on a 17 day PTO.  We would add 5 days for moving, etc.

Health Insurance: Lindsay will pay ½ of COBRA premium per month pending a discussion with Erin Keck about insurance

Other items:
- 1 year non-compete (already signed)
- Cell phone on the Lindsay plan
- Laptop / Computer

Thanks Bob!

Geoff